932 A.2d 698

**Darrell HOLMES a/k/a Lendro Thomas**

**v.**

**STATE of Maryland.**

**No. 140, Sept. Term, 2006.**

Court of Appeals of Maryland.

Sept. 21, 2007.

430

Allison E. Pierce, Assistant Public Defender (Nancy S. Forster, Public Defender, of Baltimore), on brief, for petitioner.

Mary Ann Ince, Assistant Attorney General (Douglas F. Gansler, Attorney General of Maryland, of Baltimore), on brief, for respondent.

Argued before BELL, C.J., RAKER, CATHELL *, HARRELL, BATTAGLIA, GREENE and ALAN M. WILNER (Retired, specially assigned), JJ.

BATTAGLIA, J.

The case *sub judice* presents this Court with the task of determining whether an individual who enters a guilty plea but who does not file an application for leave to appeal challenging the resulting conviction and sentence waives his right to subsequently challenge his conviction and sentence through a petition for a writ of error coram nobis when the individual is not incarcerated or on parole or probation. We shall hold that a presumption that an individual waives his right to file a petition for a writ of error coram nobis arises if the individual, after entering a guilty plea and having been informed of his right to file an application for leave to appeal, does not file an application for leave to appeal. Because the petitioner in the present case did not rebut the presumption of waiver, nor demonstrate "special circumstances" to excuse his failure to file an application for leave to appeal, we shall affirm the judgment of the Court of Special Appeals.

## I. Introduction

In 1992, petitioner, Darrell Holmes a/k/a Lendro Thomas,[1] was charged with robbery with a deadly weapon, assault with intent to commit robbery, carrying a concealed deadly weapon, and openly carrying a deadly weapon with the intent to injure. The docket entries reflect that Thomas subsequently pled

---

* Cathell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Petitioner stated in his brief before this Court that his correct name is Lendro Thomas although at his guilty plea proceeding in 1992, he testified that his correct name was Leadio Thomas. As Petitioner's counsel acknowledged at the coram nobis hearing on December 30, 2004, Petitioner was convicted in 1992 under the name of Darrell Holmes. In order to avoid further confusion, we will refer to Petitioner by the surname Thomas.

guilty to robbery with a deadly weapon at a hearing in the Circuit Court for Baltimore City, during which the court questioned Thomas and determined his name, his residence, his date of birth and age, that he was not under the influence of alcohol or drugs, that he had not been a patient in a mental institution, and that he understood the terms of his plea agreement: [2]

> [COURT]: All right. Mr. Holmes, now, or Thomas.
>
> [STATE]: It's Thomas.
>
> [COURT]: Is it a plea?
>
> [STATE]: Yes.
>
> [COUNSEL FOR THOMAS]: It is, Your Honor.
>
> [COURT]: What is the plea?
>
> [STATE]: Three years from that same date, all suspended but one year.
>
> [COURT]: All right. Three suspend all but one year.
>
> [COURT CLERK]: Probation?
>
> [STATE]: Probation to be determined by the wisdom of the court, which is extensive.
>
> [COURT]: All right. He has got two years left. It will be two years of probation. All right.
>
> [COURT CLERK]: Mr. Holmes, your correct name?
>
> [THOMAS]: Leadio Thomas.
>
> [COURT CLERK]: Who?
>
> [THOMAS]: Leadio Thomas.
>
> [COURT CLERK]: How do you spell that?
>
> [THOMAS]: L-E-A-D-I-O.
>
> [COURT CLERK]: That's your real name?
>
> [THOMAS]: Yes
>
> [COURT CLERK]: Address?
>
> [THOMAS]: 2123 North Smallwood Street.

---

2. Thomas pled guilty during a "group" guilty plea hearing. Rodney Moody, Jacqueline Tooks, Ronald Bennett, and Delroy Diggs also entered guilty pleas; none of them is a party to this appeal.

[COURT CLERK]: Is that a house or apartment?

[THOMAS]: House.

[COURT CLERK]: Zip code?

[THOMAS]: 16, 21216.

[COURT CLERK]: Date of birth?

[THOMAS]: 12/21/62.

[COURT CLERK]: How old are you?

[THOMAS]: Twenty-nine.

[COURT CLERK]: Okay. Thank you.

[COUNSEL FOR THOMAS]: Would you like me to qualify them now, Your Honor?

[COURT]: Please.

[COUNSEL FOR THOMAS]: Now, I'm going to ask you all the same questions. If you don't understand the question, raise your hand. But everybody has to answer so the stenographer can take down the answers. Okay? Now is anyone here under the influence of any alcohol or any drugs today?

[THOMAS]: No.

[COUNSEL FOR THOMAS]: Has anybody ever been a patient in a mental institution or under the care of a psychiatrist?

[THOMAS]: No.

[COUNSEL FOR THOMAS]: Now, does everyone here understand the terms of his and her plea bargain? That is, what the sentence is going to be. Does anybody have any questions about it?

[THOMAS]: No.

[COUNSEL FOR THOMAS]: Now, does anybody else have any other questions?

[THOMAS]: No.

Thomas' counsel continued the colloquy, informing Thomas that by entering a guilty plea, he would be waiving his right to trial, his right to cross-examine the witnesses against him, and

his right against self-incrimination, to which Thomas indicated his understanding:

> [COUNSEL FOR THOMAS]: All right. Now, you understand that when you have a plea bargain such as we all have here today, it means there will not be a trial in the case. In other words, you will not go to trial. The witnesses will not come into the courtroom. You will not cross-examine any witnesses and we will not produce any of our own. What will happen is that the state's attorney will read to the judge a series of facts he feels he could prove if there were a trial. Does everybody understand that?

> [THOMAS]: Yes.

> [COUNSEL FOR THOMAS]: Now, if you had wanted to have a trial, you could have had either a jury trial or a court trial. A jury trial means that twelve people are selected to hear the evidence, and they decide whether they think you are innocent or guilty. A court trial means the judge, himself, listens to the evidence, and he decides whether he thinks you are innocent or guilty. And if you had had a trial, regardless of whether you had a jury trial or a court trial, the State would have to prove that you are guilty of these charges beyond a reasonable doubt before you could be found guilty. Does everybody understand that?

> [THOMAS]: Yes.

> [COUNSEL FOR THOMAS]: Now, when you plead guilty, you give up a number of rights, including what is called a right against self-incrimination. What that means is nobody can make you be a witness against yourself in your own case. But when you plead guilty, you give up that right. Does everybody understand that?

> [THOMAS]: Yes.

Thomas was also questioned by his counsel regarding whether he understood his appellate right. More particularly, Thomas was informed that by pleading guilty, he was forfeiting his right to a direct appeal from his conviction and sentence (an "automatic" right of appeal) and that instead, he had the right

to file an application for leave to appeal ("permission" to take an appeal):

> [COUNSEL FOR THOMAS]: Now, after you plead guilty, you do not have an automatic right of appeal. You can still ask the higher court for permission to take an appeal. If the higher court should grant that permission, it could only hear an appeal on four grounds. One ground would be whether or not this court had the power to hear this case. The second ground would be whether the sentence given to you by the judge was a legal sentence. The third ground would be whether you have been adequately represented by your attorney. And I want to ask each of you, are you satisfied with the services of your attorney so far?
>
> [THOMAS]: Yes
>
> [COUNSEL FOR THOMAS]: The final ground would be whether the plea was entered into freely and voluntarily. Now, other than the plea bargain, which you each know, has anything else been offered to you or promised to you? Has anybody threatened you or forced you to plead guilty?
>
> [THOMAS]: No.
>
> [COUNSEL FOR THOMAS]: Is everybody doing so freely and voluntarily today?
>
> [THOMAS]: Yes.
>
> * * *
>
> [COUNSEL FOR THOMAS]: Now, does anybody have any questions about what we are doing here or about your plea arrangement?
>
> [THOMAS]: No.

The court then found that Thomas' plea was entered knowingly and voluntarily, heard the statement of facts from the State's Attorney, accepted Thomas' guilty plea, and sentenced Thomas to three years imprisonment, with all but one year suspended, and two years probation:

> [COURT]: I have no questions. On the basis of the advice given and the responses, I find that each understands his or her rights to a full trial and is knowingly, willingly and

voluntarily relinquishing those rights and electing to proceed by way of a guilty plea. I find that this action is being taken knowingly, willingly and voluntarily. All right. I'll hear the statement of facts.

[STATE]: Your honor, as to Mr. Diggs and Mr. Thomas, on the 20th of September, 1992, they were in the 1700 block of West North Avenue where also were Carl Barnes and Dionne Thompson. At that time, Mr. Diggs and Mr. Thomas approached those two people. One of them produced what turned out to be a pellet gun, demanded money, and received $41 from Mr. Barnes and received $13 from Ms. Thompson. The police were called. Officer Philip Sexton comes along with Officer Anthony Malocky, and they receive a description of the defendants. They canvas the area. The defendants are arrested. A pellet gun is recovered at the time, Your Honor. It was found to be a pellet gun at the crime lab. The victims are brought up to where the defendants are, and it's a show-up ID. It's a short time and a short distance after the initial robbery. That's the facts as to Mr. Thomas and Mr. Diggs.

[COUNSEL FOR THOMAS]: No additions or corrections to the statement of facts, Your Honor.

[COURT]: Well, wait a minute. Let me make a finding on Diggs and Thomas. I don't think I did yet.

[COUNSEL FOR THOMAS]: No, you didn't.

[COURT]: All right. The statement of facts read by the State's Attorney forms a sufficient factual basis for acceptance of the guilty pleas as to—you were calling only one count, the first count, as to both?

[STATE]: Yes, Your Honor.

[COURT]: All right. I will accept the guilty pleas of each of the defendants and enter a guilty finding.

[COUNSEL FOR THOMAS]: Mr. Thomas, is there anything you would like to say to the judge prior to sentencing?

[THOMAS]: No, sir.

[COUNSEL FOR THOMAS]: We are ready for sentencing.

[COURT]: As to Mr. Thomas, the sentence is three years, suspend all but one year, two years probation, court costs.

[COUNSEL FOR THOMAS]: And also to start on 9/20/92, Your Honor.

[COURT]: Yes, effective 9/20. In each case, Mr. Diggs and Mr. Thomas, the beginning portion of the time to be served is 9/20. All right.

Thereafter, Thomas' counsel again advised Thomas of his right to file an application for leave to appeal his conviction and that such an application must be filed in writing and within thirty days:

[COUNSEL FOR THOMAS]: Let me advise each of you your rights at this time. Gentlemen, you each have your right to ask for permission to make an appeal to the Court of Special Appeals of Maryland. If you want to ask for that permission, you have to do it in writing within thirty days from today. Secondly, you each have the right to ask the judge to review your sentence. You have ninety days in which to ask him to review and reconsider. And, finally, Mr. Thomas, you have the right to ask to have your sentence reviewed by a panel of three judges. They could either leave the sentence the same or reduce it. They could not increase it. If you want to ask for that right, you have to do it within thirty days. Now does everybody understand their rights?

[THOMAS]: Yes.

Thomas did not file an application for leave to appeal his conviction to the Court of Special Appeals of Maryland pursuant to Section 12–302(e) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1989 Repl.Vol.),[3] and has completed his sentence.

---

**3.** Section 12–302(e) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1989 Repl.Vol.)stated: "Section 12–301 does not permit an appeal from a final judgment entered following a plea of guilty in a circuit court. Review of such a judgment shall be sought by application for leave to appeal."

In 2004, Thomas was convicted of various drug and weapon offenses in the United States District Court for the District of Maryland. Because of his 1992 conviction for robbery with a deadly weapon, he was classified as a "career offender" under the Federal Sentencing Guidelines.[4] Prior to being sentenced in federal court, in an effort to avoid the enhanced recidivist sentencing guideline, Thomas filed, in the Circuit Court for Baltimore City, a Petition for Writ of Error Coram Nobis challenging the validity of his 1992 conviction and sentence. At hearings on December 30, 2004, January 26, 2005, and February 24, 2005, Thomas argued that his 1992 guilty plea was neither knowing nor voluntary and therefore that the resulting conviction should be vacated based upon five defects that he alleged occurred during the guilty plea proceeding:

(1) Mr. Thomas was given a group plea with four other defendants at the same time; (2) Mr. Thomas was never told what the charges against him were; (3) Mr. Thomas was not informed of the maximum penalty he faced; (4) Mr. Thomas was not asked if he wanted to plead guilty—instead he was told that was what he was doing; and (5) Mr. Thomas was not told of his right to a speedy and public trial.

In a written order and memorandum, Judge W. Michel Pierson of the Circuit Court for Baltimore City rejected four of Thomas' arguments, finding that Thomas did not establish that his counsel's performance was affected by the "group plea"; that Thomas did not have to be told of the maximum sentence he faced because he acquiesced in the plea agreement and agreed-upon sentence; that the record reflected that Thomas was asked if he was pleading guilty and that he responded affirmatively; and that Thomas was not required to be advised of his right to a speedy and public trial. Judge Pierson determined, however, that the record was not suffi-

---

4. On May 2, 2005, Thomas was sentenced in his federal case to 204 months imprisonment and thereafter, filed a notice of appeal to the United States Court of Appeals for the Fourth Circuit; the court affirmed Thomas' conviction and sentence.

cient to show that Thomas understood the nature of the charges against him, but denied Thomas' petition, concluding that Thomas had not rebutted the presumption that he intelligently and knowingly waived his right to challenge his conviction in a writ of error coram nobis proceeding by not filing an application for leave to appeal his original conviction and sentence:

> However, the contention that Mr. Thomas was never told what the charges against him were stands on a different footing. Maryland Rule 4–242(c) specifically requires that: "The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, *with understanding of the nature of the charge* and the consequences of the plea; and (2) there is a factual basis for the plea." The test for whether the defendant has been made aware of the nature of the offense is whether the trial judge, considering the record, could fairly determine that the defendant understood the nature of the charges. *State v. Priet*, 289 Md. 267, 280[,424 A.2d 349, 356] (1981).

> The State correctly points out that compliance with this requirement does not require that the court explain the elements of the charge. A defendant's understanding of the charge may be inferred from the record. As the court stated in *Priet*, in some cases the elements of the charge may be apparent from the charge itself. However, in this case, nowhere in the transcript of the guilty plea proceeding supplied to the court is there even any identification of the charge to which petitioner is pleading guilty. Therefore, the court does not believe that the record could support the conclusion that the trial court could make a determination that petitioner understood the nature of the charges against him.

> The State argues that petitioner waived his right to challenge the effectiveness of the guilty plea. The State contends that petitioner waived this right by failing to file an

application for leave to appeal or challenge the effectiveness of the plea in any other forum. In support of this proposition, the State cites *McElroy v. State,* 329 Md. 136, 617 A.2d 1068 (1993). Petitioner argues in response that both *Skok*[5] and the recent decision of the Court of Special Appeals in *Skok v. State,* 361 Md. 52[760 A.2d 647] (2000), preclude application of the waiver standard employed in *McElroy.* In *Skok,* the Court of Appeals held that ordinary concepts of waiver apply to coram nobis petitions. It stated that:

> Basic principles of waiver are applicable to issues raised in coram nobis proceedings. *United States v. Morgan,* 346 U.S. [502, 512, 74 S.Ct. 247, 253, 98 L.Ed. 248, 257.] ... Therefore, the same body of law concerning waiver and final litigation of an issue, which is applicable under the Maryland Post Conviction Procedure Act, Code(1957, 1996 Repl.Vol., 1999 Supp.), Art. 27, §§ 645A (b) through (d), shall be applicable to a coram nobis proceeding challenging a criminal conviction. *See, e.g., State v. Rose,* 345 Md. 238, 243–250, 691 A.2d 1314, 1316–1320 (1997); *Hunt v. State,* 345 Md. 122, 132–139, 691 A.2d 1255, 1259–1263, *cert. denied,* 521 U.S. 1131, 117 S.Ct. 2536, 138 L.Ed.2d 1036 (1997); *State v. Hernandez,* 344 Md. 721, 690 A.2d 526 (1997); *Walker v. State,* 343 Md. 629, 640–650, 684 A.2d 429, 434–439 (1996); *Oken v. State,* 343 Md. 256, 269–273, 681 A.2d 30, 36–38 (1996), *cert. denied,* 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997); *Curtis v. State,* 284 Md. 132, 395 A.2d 464 (1978).

In *Curtis v. State,* 284 Md. 132[, 395 A.2d 464] (1978), a petitioner who had been convicted of murder sought to raise an allegation of ineffective assistance of counsel in a post-conviction petition. The State argued that the allegation had been waived because it had not been raised in petitioner's direct appeal or in his previous petition. It relied upon Md. Ann.Code, art. 27, § 645A (c) as then effective. That statute provided that an allegation of error was deemed to have been waived when a petitioner intelligently and know-

---

5. *Skok v. State,* 361 Md. 52, 760 A.2d 647 (2000).

ingly failed to make such allegation, and enunciated a rebuttable presumption that the petitioner intelligently and knowingly failed to make such allegation when it had not been made in a prior proceeding. It also provided that a petitioner could be relieved of the consequences of the waiver under special circumstances. The State argued that only a finding of "special circumstances" would rebut the presumption of waiver. The court rejected this argument. It held that Section 645A applied to waiver of fundamental rights to which the waiver standard of *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) was applicable. It further held that the presumption established by the statute could be rebutted by evidence or stipulated facts showing that the petitioner did not intelligently and knowingly fail to raise the issue previously. In *Curtis*, the parties stipulated to facts that showed that petitioner was not aware that his counsel might have been ineffective or that he should have raised the issue previously. Accordingly, the court held that the presumption had been rebutted. *McElroy v. State*, 329 Md. 136, 617 A.2d 1068 (1992) involved two defendants who challenged their guilty pleas under the Post Conviction Procedure Act. Each defendant claimed that his guilty plea was defective because the judge who conducted the guilty plea neglected to explain, on the record, all of the defendant's rights. Neither defendant had filed an application for leave to appeal following his guilty plea. The court again construed the provisions of section 645A(c) creating a rebuttable presumption that a petitioner intelligently and knowingly failed to raise an allegation of error affecting fundamental constitutional rights where that allegation could have been made in a prior proceeding, which applied because the surrender of rights by a guilty plea is a fundamental constitutional right. Each of the petitioners had been advised of his right to file an application for leave to appeal in order to seek appellate review of the guilty plea conviction. Neither of the petitioners, unlike the petitioner in *Curtis*, offered any explanation of the reason that he did not seek review. Based on this circum-

stance, the court distinguished *Curtis* because in that case there had been a showing of facts that rebutted the presumption. 329 Md. at 147–148, 151, 617 A.2d 1068.

[I]t is the court's conclusion that under the standards of waiver that apply to the Post Conviction Act, petitioner has failed to establish that his waiver of his right to challenge the conviction was not knowing and intelligent. Unlike the petitioner in *Curtis,* petitioner has offered no evidence whatsoever to show that his failure to challenge his conviction was not intelligent and knowing. However, petitioner challenges the assertion that these standards of waiver apply to a coram nobis petition. In *Skok,* the court explained its expansion of the writ of coram nobis as follows:

> Along with the vast majority of appellate courts which have considered the matter, we believe that the scope of coram nobis, as delineated in *United States v. Morgan,* is justified by contemporary conditions and public policy. Very often in a criminal case, because of a relatively light sanction imposed or for some other reason, a defendant is willing to forego an appeal even if errors of a constitutional or fundamental nature may have occurred. Then, when the defendant later learns of a substantial collateral consequence of the conviction, it may be too late to appeal, and, if the defendant is not incarcerated or on parole or probation, he or she will not be able to challenge the conviction by a petition for a writ of habeas corpus or a petition under the Post Conviction Procedure Act.

361 Md. at 77, 760 A.2d 647. As petitioner argues, it seems from this passage that the defendant who is the paradigmatic candidate for the availability of the expanded writ of coram nobis is a defendant who has knowingly eschewed his right to challenge his conviction, i.e., who has intelligently and knowingly waived his right to challenge the conviction. Notwithstanding this passage, it is the court's conclusion, for two reasons, that the waiver standards embodied in the Post Conviction Act do apply. First, to hold otherwise would be to render meaningless the statement made in *Skok* that these waiver standards apply—to conclude that the

Court of Appeals did not mean what it said. Second, applying these waiver standards is in fact consistent with the purpose of the holding in *Skok.* The court's purpose was to provide a remedy for persons who could not attack their convictions under the Post Conviction Act because they no longer were subject to any sentence or supervision. Such a remedy may be provided by granting to such persons the same right that they would have to attack the conviction if they were so subject—and that right is the right provided by the Post Conviction Act. That right is conditioned by the waiver standards set forth in the statute. To effectuate that remedy, it is not necessary to provide them with a greater remedy than they would have enjoyed if they were subject to the Act. Furthermore, the Act's provision that the court may decline to apply the waiver standards in "special circumstances" provides the court with an additional power to relieve petitioners from the consequences of their waiver when warranted. Therefore, it is not necessary to dispense with the waiver standards of the Act in order to have the power to grant relief.

(emphasis in original) (omission in original).

Thomas noted an appeal to the Court of Special Appeals which affirmed in an unreported opinion, *Holmes a/k/a Thomas v. State,* No. 588, Sept. Term 2005 (filed Nov. 17, 2006). The intermediate appellate court agreed with the circuit court that it was not required that Thomas be informed of the maximum penalty he faced for pleading guilty, but disagreed with the circuit court that Thomas had to be informed of the "identification" of the charge to which he was pleading guilty, concluding that Thomas' 1992 guilty plea was knowing and voluntary:

It is not significant that a criminal defendant is not told the common law or statutory identifying *name* of the offense with which he was charged. Rule 4–242(c) requires that the defendant has an *understanding of the nature of the charge.* The nature of some crimes may be deduced from the description of the crime itself.

* * *

The statement of facts upon which the charge was premised was read into the record in appellant's presence. The State clearly described a robbery with a dangerous weapon; in fact, making specific reference to the use of the "pellet gun" in the course of the "robbery." We find that description a sufficient foundation for the trial court to determine that appellant understood the nature of the charge and the elements of the crime.

(emphasis in original). In dicta, Judge J. Frederick Sharer, writing for the three judge panel, opined that Thomas waived his right to challenge whether his guilty plea was intelligent and knowing because he failed to raise the allegation of error in an application for leave to appeal his original conviction:

Appellant had the opportunity to file, and was advised of his right to file, an application for leave to appeal following his 1992 conviction. For reasons that remain unexplained, he failed to avail himself of that right. The burden, therefore, was upon appellant to convince the *coram nobis* court that his failure to seek some form of post-conviction relief was not an intelligent and knowing waiver of his right.

* * *

Appellant argues that the *Skok* court did not equate the failure to file an application for leave to appeal from a guilty plea with the waiver of the right to challenge that plea through a *coram nobis* petition at a later time. To interpret *Skok* as appellant argues would require us to ignore the Court's holding that the waiver provisions of the PCPA are applicable to *coram nobis* proceedings. We believe appellant's argument to be without merit.

Finally, appellant claims that the legislature intended different results under the waiver provisions of the PCPA for criminal defendants' who fail to pursue a direct appeal, as contrasted with those who fail to seek leave to appeal from a guilty plea.

* * *

Appellant asserts that because the language, "whether or not the petitioner took an appeal," was included in one subsection and not the other, the two subsections should be read differently. Appellant would have us find that waiver only occurs in three circumstances: (1) where a petitioner fails to file a direct appeal; (2) where a petitioner fails to raise the issue in a direct appeal; (3) where a petitioner files an application for leave to appeal and fails to raise the issue. We fail to appreciate the logic of appellant's argument. Following a conviction based on a guilty plea, a convicted defendant's options with respect to allegations of error are: (1) allege the error in an application for leave to appeal; or (2) do nothing. As we read the PCPA, if a defendant does nothing, the allegation of error is deemed waived, subject to rebuttal. *See* Md.Code Ann., Crim. Proc. § 7–106 (2001). Because of appellant's failure to raise any allegation of error, the statutory presumption of an intelligent and knowing waiver arose. Appellant has failed to produce any evidence to rebut this presumption.

We granted Thomas' petition for writ of certiorari, which posed three questions for our review:

1) Does a person who enters a guilty plea but who does not file an application for leave to appeal or a post conviction petition challenging that plea waive his right to later challenge the resulting conviction in a coram nobis petition?

2) Did petitioner waive his right to challenge his 1992 guilty plea conviction through a coram nobis petition?

3) Was petitioner's guilty plea entered in violation of constitutional principles when at no point during the guilty plea hearing was he informed of the charge to which he was pleading guilty or of the statutory maximum penalty for that charge?

*Holmes a/k/a Thomas v. State,* 397 Md. 396, 918 A.2d 468 (2007). We hold that if an individual who pleads guilty, having been informed of his right to file an application for leave to

appeal from his conviction and sentence, does not file such an application for leave to appeal, a rebuttable presumption arises that he has waived the right to challenge his conviction in a subsequent coram nobis proceeding. Because Thomas did not rebut the presumption of waiver, nor demonstrate "special circumstances" to excuse his failure to file an application for leave to appeal, his right to challenge his conviction and sentence through a writ of error coram nobis petition was waived.[6]

## II. Discussion

■ Thomas contends that a person who enters a guilty plea but does not file an application for leave to appeal the resulting conviction, does not waive the right to challenge his conviction in a coram nobis proceeding. He argues that under Section 7–106 of the Criminal Procedure Article, Maryland Code (2001),[7] the rebuttable presumption that an individual

---

**6.** Because we find that Thomas waived his right to challenge his 1992 conviction through coram nobis proceedings, we do not address question three.

**7.** Section 7–106 provides:

(a) *When finally litigated.*—For the purposes of this title, an allegation of error is finally litigated when:

(1) an appellate court of the State decides on the merits of the allegation:

(i) on direct appeal; or

(ii) on any consideration of an application for leave to appeal filed under § 7–109 of this subtitle; or

(2) a court of original jurisdiction, after a full and fair hearing, decides on the merits of the allegation in a petition for a writ of habeas corpus or a writ of error coram nobis, unless the decision on the merits of the petition is clearly erroneous.

(b) *Waiver of allegation of error.*—(1)(i) Except as provided in subparagraph (ii) of this paragraph, an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation:

1. before trial;

2. at trial;

3. on direct appeal, whether or not the petitioner took an appeal;

4. in an application for leave to appeal a conviction based on a guilty plea;

5. in a habeas corpus or coram nobis proceeding began by the petitioner;

waives his right to challenge his conviction based upon a guilty plea only applies if the individual actually files an application for leave to appeal and fails to raise the allegation of error. He asserts that because the General Assembly did not include a provision in Section 7–106(b) addressing the effect of failing to file an application for leave to appeal on post-conviction relief as it did when it addressed direct appeals, the Legislature could not have intended the waiver provisions to apply when an application for leave for appeal is not filed. Thomas also contends that this Court has not equated the failure to file an application for leave to appeal with waiver under the Post Conviction Procedure Act, citing our decision in *Skok v. State*, 361 Md. 52, 760 A.2d 647 (2000) for support.

Thomas also argues that even were a rebuttable presumption of waiver to arise in this case, that "special circumstances" exist which justify his failure to file an application for

---

6. in a prior petition under this subtitle; or
7. in any other proceeding that the petitioner began.
(ii) 1. Failure to make an allegation of error shall be excused if special circumstances exist.
2. The petitioner has the burden of proving that special circumstances exist.
(2) When a petitioner could have made an allegation of error at a proceeding set forth in paragraph (1)(i) of this subsection but did not make an allegation of error, there is a rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation.
(c) *Effect of judicial decision that Constitution imposes new standard.*—(1) This subsection applies after a decision on the merits of an allegation of error or after a proceeding in which an allegation of error may have been waived.
(2) Notwithstanding any other provision of this title, an allegation of error may not be considered to have been finally litigated or waived under this title if a court whose decisions are binding on the lower courts of the State holds that:
(i) the Constitution of the United States or the Maryland Constitution imposes on State criminal proceedings a procedural or substantive standard not previously recognized; and
(ii) the standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner's conviction or sentence.
Md.Code (2001), § 7–106 of the Criminal Procedure Article. Section 7–106 was derived without substantive change from former Section 645A (b) through (d) of Article 27 of the Maryland Code.2001 Md. Laws, Chap. 10.

leave to appeal his 1992 conviction because his sentence was significantly below the maximum authorized sentence for robbery with a deadly weapon and because Thomas did not anticipate that he would be subject to an enhanced penalty as a recidivist in federal court. Additionally, Thomas contends that he has rebutted the presumption of waiver because he did not intelligently and knowingly waive his challenge to his conviction because he did not know that his right to file an application for leave to appeal included the right to challenge whether he knowingly entered his guilty plea. He also asserts that because his guilty plea was not entered intelligently and knowingly, he could not have intelligently and knowingly waived his right to file for leave to appeal, citing *Parker v. State,* 160 Md.App. 672, 866 A.2d 885 (2005), for support.

The State, conversely, urges us to hold that an individual who enters a guilty plea but who does not file an application for leave to appeal challenging his conviction waives the right to challenge any errors in a subsequent coram nobis proceeding. The State argues that the rebuttable presumption of waiver under Section 7–106(b)(1)(i)(4) of the Criminal Procedure Article, Maryland Code (2001) ("[A]n allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation . . . in an application for leave to appeal a conviction based on a guilty plea . . . ."), arises when an allegation of error is not raised in an application for leave to appeal, whether the application is filed or not. The State also asserts that "special circumstances" do not exist in this case, and that Thomas has not presented any evidence to rebut the presumption that he intelligently and knowingly waived his right to file an application for leave to appeal and challenge his conviction.

We have taken the opportunity most recently to explore the applicability of a writ of error coram nobis to the voluntariness of a criminal plea in *Skok v. State,* 361 Md. 52, 760 A.2d 647 (2000). In that case, Skok pled guilty to possession of cocaine and was sentenced to imprisonment for two years with all but the time served suspended. Skok subsequently entered a plea of nolo contendere to another charge of possession of cocaine

and was sentenced to imprisonment for one day with credit for the one day spent in jail. In neither case did Skok file an application for leave to appeal his conviction. Based upon the judgments against him in the two criminal cases, the United States Immigration and Naturalization Service subsequently initiated deportation proceedings against Skok, who subsequently filed a petition for a writ of error coram nobis alleging that the judgments against him should be vacated. The circuit court initially issued an order denying Skok's petition "without prejudice" and also denied Skok's motion for reconsideration, stating that the writ of error coram nobis "is an extreme remedy and is not appropriate relief in this case." *Id.* at 61, 760 A.2d at 651. The Court of Special Appeals affirmed the judgment of the circuit court and held that error coram nobis relief was a limited remedy at common law.

Judge John C. Eldridge, writing for this Court, reversed the Court of Special Appeals and in so doing, recognized that at common law, the writ of error coram nobis was utilized to correct errors in fact affecting the validity and regularity of the judgment:

Apparently the first coram nobis case in this Court was *Hawkins v. Bowie,* 9 G. & J. at 437 (1838), where the Court described the nature of a coram nobis proceeding as follows:

A writ of error coram nobis, lies to correct an error in fact, in the same Court where the record is; as if there be error in the process, or through default of the clerk, it shall be reversed in the same Court, by writ of error sued thereon before the same justices....

But of an error in law, which is the default of the justices, the same Court cannot reverse the judgment by writ of error; nor without a writ of error, but this error ought to be redressed in another Court, before other justices, by writ of error....

It is our design, in reviewing this cause, to inquire, first, whether the errors assigned fall within that class, which may, according to the rules and principles of law, be revised and corrected by writ of error *coram nobis;* namely, whether they be errors of fact, for such errors

only, can warrant the same Court to reverse a judgment, because, error in fact, is not the error of the Judges. Therefore, the reversing such judgment, is not reversing their own judgment.

A more detailed description of the writ of error coram nobis was set forth by Judge Delaplaine for the Court in *Madison v. State,* 205 Md. 425, 109 A.2d 96 (1954). The Court in *Madison* also pointed out that, under modern practice, a motion to the trial court may be made instead of having the writ issued out of Chancery, and that coram nobis was not available to determine whether witnesses testified falsely. The Court in *Madison* thus explained (205 Md. at 432, 109 A.2d at 99):

At common law the ancient writ of error *coram nobis* has been available to correct errors of fact. It has been allowed, without limitation of time, for facts affecting the validity and regularity of the judgment, and has been used in both civil and criminal cases. While the occasions for its use have been infrequent, no one has doubted its availability. It is still available in Maryland in both civil and criminal cases. In England the writ of *coram nobis* was issued out of Chancery like other writs, but the procedure by motion in the case is now the accepted American practice. The present case was not brought on a writ of *coram nobis*. However, since the courts now act on motion to rectify such mistakes of fact as were originally reviewable on *coram nobis,* it is appropriate to say that *coram nobis* will not lie (1) to correct an issue of fact which has been adjudicated, even though wrongly determined, or (2) to determine whether any witnesses testified falsely at the trial, or (3) to present newly discovered evidence, or (4) to strike out a conviction on the ground that the prosecuting witness was mistaken in his identification of the accused as the person who committed the crime. The purpose of the writ is to bring before the court facts which were not brought into issue at the trial of the case, and which were material to the validity and regularity of the proceedings, and which, if known by the court, would have prevented the judgment. It is manifest

that if the writ were available to allow the court in which the judgment was entered to decide subsequently whether the witnesses who testified at the trial had testified falsely, and, if it should decide that they had, to strike out the judgment, then the judgment might be the beginning, rather than the end, of litigation.

*Skok,* 361 Md. at 66–68, 760 A.2d at 654–55 (omissions in original). With regard to voluntariness of a plea and coram nobis relief, Judge Eldridge opined about the historical and contemporary context of the extraordinary writ and determined that the traditional scope of coram nobis had been broadened to encompass legal errors of a constitutional or fundamental proportion when the individual, who is no longer incarcerated or on parole or probation, is faced with serious collateral consequences of his conviction:

Although the scope of the issues which could be raised in a traditional coram nobis proceeding may have been narrow, it is noteworthy that one of the issues which could be raised was the voluntariness of a plea in a criminal case. As Judge Delaplaine again stated for the Court in *Bernard v. State,* 193 Md. 1, 4, 65 A.2d 297, 298 (1949),

the writ [of error coram nobis] will lie to set aside a judgment obtained by fraud, coercion, or duress, *or where a plea of guilty was procured by force, violence, or intimidation,* or where at the time of the trial the defendant was insane, when such facts were not known to the trial court when the judgment was entered, or where the accused was prevented by fraud, force, or fear from presenting defensive facts which could have been used at his trial, when such facts were not known to the court when the judgment was entered. The writ will not lie to correct an issue of fact which has been adjudicated even though wrongly determined; nor for alleged false testimony at the trial; nor for newly discovered evidence.

\* \* \*

Consequently, as a result of *United States v. Morgan,* in both federal and state courts, the scope of a coram nobis

proceeding has been broadened.  As set forth by Professor Wright (3 Wright, *Federal Practice and Procedure Criminal* 2d, § 592, at 429–432 (1982), footnotes omitted),

> [t]he present-day scope of coram nobis is broad enough to encompass not only errors of fact that affect the validity or regularity of legal proceedings, but also legal errors of a constitutional or fundamental proportion.  The conviction is presumed to have been the result of proper proceedings, and the burden is on the defendant to show otherwise.  In *Morgan* the Court said broadly that "in behalf of the unfortunates, federal courts should act in doing justice if the record makes plain a right to relief," but it also said that courts should use "this extraordinary remedy only under circumstances compelling such action to achieve justice."
>
> The *Morgan* case has encouraged lower courts to allow challenges of a conviction by coram nobis on behalf of a defendant who has not yet commenced serving his sentence or has completed service of it.  The Supreme Court has expressly recognized, in a different but not dissimilar context, "the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences."  Coram nobis is available to challenge a conviction in order to remove these consequences.

\* \* \*

Moreover, serious collateral consequences of criminal convictions have become much more frequent in recent years.  The past few decades have seen a proliferation of recidivist statutes throughout the country.  In addition, apparently because of recent changes in federal immigration laws, regulations, and administration, there has been a plethora of deportation proceedings against non-citizens based on relatively minor criminal convictions.

\* \* \*

In light of these serious collateral consequences, there should be a remedy for a convicted person who is not

incarcerated and not on parole or probation, who is suddenly faced with a significant collateral consequence of his or her conviction, and who can legitimately challenge the conviction on constitutional or fundamental grounds. Such person should be able to file a motion for coram nobis relief regardless of whether the alleged infirmity in the conviction is considered an error of fact or an error of law.

*Skok*, 361 Md. at 68–69, 75–78, 760 A.2d at 656, 659–61 (emphasis in original). Therefore, the writ of error coram nobis is available not only to correct errors of fact that affect the validity or regularity of a judgment, but also to correct constitutional or fundamental legal errors for a petitioner who is not incarcerated and not on parole or probation and who is faced with serious collateral consequences of his conviction; we so recognized this in *Skok:*

> Very often in a criminal case, because of a relatively light sanction imposed or for some other reason, a defendant is willing to forego an appeal even if errors of a constitutional or fundamental nature may have occurred. *Then, when the defendant later learns of a substantial collateral consequence of the conviction, it may be too late to appeal, and, if the defendant is not incarcerated or on parole or probation, he or she will not be able to challenge the conviction by a petition for a writ of habeas corpus or a petition under the Post Conviction Procedure Act.*

*Id.* at 77, 760 A.2d at 660 (footnote omitted) (emphasis added).

Thomas contends that because he is suffering serious collateral consequences as a result of his 1992 conviction, being that he was sentenced to an enhanced penalty under the federal recidivist sentencing guidelines, he is entitled to coram nobis relief. This Court in Skok, however, recognized that the "scope of coram nobis to challenge criminal convictions is, however, subject to several important qualifications." *Id.* at 78, 760 A.2d at 661. One such qualification, Judge Eldridge iterated, is that the "[b]asic principles of waiver are applicable to issues raised in coram nobis proceedings," *id.* at 79, 760

A.2d at 661, citing *United States v. Morgan,* 346 U.S. 502, 511–12, 74 S.Ct. 247, 252–53, 98 L.Ed. 248, 256–57 (1954), in which the Supreme Court stated that "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through [the coram nobis] extraordinary remedy only under circumstances compelling such action to achieve justice," and referred to *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), wherein the Court noted that waiver occurs when there is an intentional relinquishment or abandonment of a known right or privilege, which depends upon the particular facts and circumstances of each case.

In defining the principles to be applied, this Court adopted those provisions pertaining to waiver contained in the Maryland Post Conviction Procedure Act, Section 645A (b) through (d) of Article 27, Maryland Code (1957, 1996 Repl.Vol., 1999 Supp.): [8]

Therefore, the same body of law concerning waiver and final litigation of an issue, which is applicable under the Mary-

---

8.  As applicable in *Skok,* Section 645A (b) through (d) provided:

(b) *When allegation of error deemed to be finally litigated.*—For the purposes of this subtitle, an allegation of error shall be deemed to be finally litigated when an appellate court of the State has rendered a decision on the merits thereof, either upon direct appeal or upon any consideration of an application for leave to appeal filed pursuant to § 645–I of this subtitle; or when a court of original jurisdiction, after a full and fair hearing, has rendered a decision on the merits thereof upon a petition for a writ of habeas corpus or a writ of error coram nobis, unless said decision upon the merits of such petition is clearly erroneous.

(c) *When allegation of error deemed to have been waived.*—(1) For the purposes of this subtitle, an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation before trial, at trial, on direct appeal (whether or not said petitioner actually took such as appeal), in an application for leave to appeal a conviction based on a guilty plea, in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, unless the failure to make such allegation shall be excused because of special circumstances. The burden of proving the existence of such special circumstances shall be upon the petitioner.

land Post Conviction Procedure Act, Code (1957, 1996 Repl. Vol., 1999 Supp.), Art. 27, § 645A (b) through (d), shall be applicable to a coram nobis proceeding challenging a criminal conviction. *See, e.g., State v. Rose,* 345 Md. 238, 243–250, 691 A.2d 1314, 1316–1320 (1997); *Hunt v. State,* 345 Md. 122, 132–139, 691 A.2d 1255, 1259–1263, *cert. denied,* 521 U.S. 1131, 117 S.Ct. 2536, 138 L.Ed.2d 1036 (1997); *State v. Hernandez,* 344 Md. 721, 690 A.2d 526 (1997); *Walker v. State,* 343 Md. 629, 640–650, 684 A.2d 429, 434–439 (1996); *Oken v. State,* 343 Md. 256, 269–273, 681 A.2d 30, 36–38 (1996), *cert. denied,* 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997); *Curtis v. State,* 284 Md. 132, 395 A.2d 464 (1978).

*Skok,* 361 Md. at 79, 760 A.2d at 662. Therefore, in order to understand the body of law applicable to the present case,[9] we turn to the cases themselves.

---

(2) When an allegation of error could have been made by a petitioner before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in an application for leave to appeal a conviction based on a guilty plea, in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, but was not in fact so made, there shall be a rebuttable presumption that said petitioner intelligently and knowingly failed to make such allegation.

(d) *Decision that Constitution imposes standard not heretofore recognized.*—For the purposes of this subtitle and notwithstanding any other provision hereof, no allegation of error shall be deemed to have been finally litigated or waived where, subsequent to any decision upon the merits thereof or subsequent to any proceeding in which said allegation otherwise may have been waived, any court whose decisions are binding upon the lower courts of this State holds that the Constitution of the United States or of Maryland imposes upon State criminal proceedings a procedural or substantive standard not theretofore recognized, which such standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner's conviction or sentence.

Md.Code (1957, 1996 Repl.Vol., 1999 Supp.), Art. 27, § 645A (b)-(d). In 2001, Section 645A was recodified without substantive change as Section 7–106 of the Criminal Procedure Article. 2001 Md. Laws, Chap. 10.

**9.** Since *Skok* was decided in 2000, we have decided *Conyers v. State,* 367 Md. 571, 790 A.2d 15 (2002), in which we held that under Section

In *Curtis v. State,* 284 Md. 132, 395 A.2d 464 (1978), the petitioner was convicted at a trial of first-degree murder and was sentenced to life imprisonment, which was affirmed on appeal. Thereafter, Curtis, represented by counsel different from his trial/appellate counsel, filed a petition under the Post Conviction Procedure Act, which was denied. While Curtis remained incarcerated, he then initiated a second post conviction petition, represented by yet a third attorney, alleging for the first time that his Sixth Amendment right to effective assistance of counsel was violated at trial, on direct appeal, and during the first post conviction proceeding. Curtis proffered that he would have raised the issue of ineffective assistance of counsel previously but for the fact that he was never advised by his trial/appellate counsel nor by counsel on his first post conviction petition that he should have raised the issue; that he relied entirely upon his trial/appellate counsel and upon his counsel during his first post conviction petition; and that he had a seventh grade education and a low IQ. The circuit court granted the State's motion to dismiss the petition, holding that the matter of inadequacy of counsel had been waived because of Curtis' failure to raise it at the first post conviction proceeding. The Court of Special Appeals affirmed, iterating that the failure of Curtis' attorney at the first post conviction proceeding to raise the matter of trial and appellate counsel's inadequacy resulted in waiver because Curtis was not required to intelligently and knowingly waive the issue himself.

The issue presented in *Curtis* required this Court to interpret the waiver provisions of the Post Conviction Procedure Act of Maryland, Section 645A (c) of Article 27, Maryland Code (1957, 1976 Repl.Vol.), specifically whether the "intelligent and knowing" waiver standard in subsection (c), was applicable in all circumstances when a defendant could have raised an allegation of error in a post conviction petition but

---

645A (c), a petitioner could not waive what he or she "could not reasonably know." *Id.* at 595, 790 A.2d at 29.

did not. Those provisions stated then and continue to state as Section 7–106(b), in applicable part:

(c) *When allegation of error deemed to have been waived.—* For the purposes of this subtitle, an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, unless the failure to make such allegation shall be excused because of special circumstances. The burden of proving the existence of such special circumstances shall be upon the petitioner.

When an allegation of error could have been made by a petitioner before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, but was not in fact so made, there shall be a rebuttable presumption that said petitioner intelligently and knowingly failed to make such allegation.

Maryland Code (1957, 1976 Repl.Vol.), Article 27, Section 645A (c). We ascertained that the General Assembly did not "intend that the definition of 'waiver' set forth in subsection (c) determine in all cases the right to raise for the first time any issue in a prior conviction action, regardless of the nature of prior procedural defaults, tactical decisions of counsel, or omissions of counsel." *Curtis,* 284 Md. at 141, 395 A.2d at 469. Instead, we held that the intelligent and knowing waiver standard in Section 645A (c) was applicable only "in those circumstances where the waiver concept of *Johnson v. Zerbst* and *Fay v. Noia*[372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837

(1963)][10] [is] applicable," i.e., situations which require a litany with the defendant.[11] *Curtis*, 284 Md. at 149, 395 A.2d at 474. "Other situations," we noted, "are beyond the scope of subsection (c), to be governed by case law or pertinent statutes or rules. Tactical decisions, when made by an authorized competent attorney, as well as legitimate procedural requirements, will normally bind a criminal defendant." *Id.* at 149–50, 395 A.2d at 474.

In considering Curtis' allegation that he was deprived of his Sixth Amendment right to effective assistance of counsel at trial and on appeal, we stated that the question of the constitutional adequacy of trial and appellate counsel's representation is governed by the intelligent and knowing standard of waiver under Section 645A (c), and that his contention could only be deemed waived for purposes of Section 645A (c) if Curtis knowingly and intelligently failed to raise it previously. *Id.* at 150, 395 A.2d at 474. Accepting the proffered facts as true, we concluded that "Curtis did not 'intelligently and knowingly' fail to previously raise the matter of his trial [and appellate] counsel's alleged inadequacy. Therefore, the issue cannot be deemed to have been waived." *Id.* at 151, 395 A.2d at 475.

In *Oken v. State*, 343 Md. 256, 681 A.2d 30 (1996), *cert. denied*, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997), after having been convicted at trial of first-degree murder, first-degree sexual offense, burglary, and the use of a handgun in a crime of violence, Oken was sentenced to death. He filed a direct appeal, after which this Court reversed only the burglary conviction. Oken subsequently filed a petition under the Post Conviction Procedure Act, which was denied after a hearing. Before this Court, after we granted Oken's applica-

10. 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

11. *See In re Blessen H.*, 392 Md. 684, 700, 898 A.2d 980, 989 (2006) (remarking that heightened "intelligent and knowing" standard for waiver requires a colloquy with defendant); *Martinez v. State*, 309 Md. 124, 133, 522 A.2d 950, 954 (1987) (iterating that an intelligent and knowing waiver colloquy with the defendant must be conducted on the record in open court).

tion for leave to appeal from the denial of his petition for relief, Oken raised a challenge to the trial court's voir dire, which allegedly had failed to ask whether any of the venire panel had a pro-death penalty bias. Because Oken had not raised the issue on direct appeal, this Court was confronted again with whether he had waived the error under Section 645A (c).[12] Oken argued that propounding the pro-death penalty bias question was a right that could not be waived because he had not knowingly and intelligently waived that right, so that the failure to raise the issue on direct appeal could not constitute waiver. We held that the right to ask pro-death penalty bias questions could have been waived by failure to raise the issue on direct and that the intelligent and knowing standard of waiver did not apply under Section 645A (c). *Id.* at 272, 681 A.2d at 38. Oken argued, nevertheless, that circumstances existed to justify his failure to raise the allegation of error on direct appeal under Maryland Rule 8–131,[13] that being that there was an intervening change in law

---

**12.** Section 645A (c), as applicable in *Oken*, was the same as applied in *Skok* and delineated in footnote 8.

**13.** Maryland Rule 8–131 provided then, and continues to provide, in pertinent part:

(a) **Generally.** The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

(b) **In Court of Appeals—Additional Limitations.**

(1) *Prior Appellate Decision.* Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals or by a circuit court acting in an appellate capacity, the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals. Whenever an issue raised in a petition for certiorari or a cross-petition involves, either expressly or implicitly, the assertion that the trial court committed error, the Court of Appeals may consider whether the error was harmless or non-prejudicial even

when *Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), was decided by the Supreme Court and his counsel did not have sufficient time to raise the issue on direct appeal. We rejected this argument, concluding that the right of a defendant to conduct voir dire to identify prospective jurors who harbored disqualifying biases in favor of the death penalty had in fact been recognized by the Supreme Court and this Court in cases other than *Morgan* in advance of Oken's direct appeal. *Oken*, 343 Md. at 273–74, 681 A.2d at 38.

In *Walker v. State*, 343 Md. 629, 684 A.2d 429 (1996), the petitioner was convicted at a trial of assault with intent to murder. After his conviction was affirmed by the Court of Special Appeals, Walker filed two petitions for post conviction relief, both of which were denied. In neither of those petitions did he challenge the assault with intent to murder jury instruction, to which his attorney did not object; he subsequently filed a third petition for post conviction relief while incarcerated, asserting that the trial court had erroneously instructed the jury regarding the intent element. After the case "ping-ponged" between the circuit court and the Court of Special Appeals, we granted certiorari, to consider in part whether the Section 645A (c) waiver provisions applied.[14] We concluded that because an issue over the accuracy of a jury instruction concerning elements of an offense does not require an intelligent and knowing waiver, the failure of Walker's attorneys to object to the jury instruction or subsequently challenge the jury instruction on direct appeal constituted waiver. *Id.* at 647, 684 A.2d at 437–38. Walker argued,

---

though the matter of harm or prejudice was not raised in the petition or in a cross-petition.

(2) *No Prior Appellate Decision.* Except as otherwise provided in Rule 8–304(c), when the Court of Appeals issues a writ of certiorari to review a case pending in the Court of Special Appeals before a decision has been rendered by that Court, the Court of Appeals will consider those issues that would have been cognizable by the Court of Special Appeals.

**14.** Section 645A (c), as applicable in *Walker,* was the same as applied in *Skok* and stated in footnote 8.

nevertheless, that his failure to allege the error previously was excused by special circumstances, because the instruction constituted "plain error." We rejected his argument, iterating that intent was not an issue in Walker's case, and so he was not deprived of a fair trial. *Id.* at 650, 684 A.2d at 439.

In *State v. Hernandez*, 344 Md. 721, 690 A.2d 526 (1997), the petitioner entered a guilty plea to various drug offenses. After he pled guilty to two of the charges, Hernandez filed an application with the Court of Special Appeals for leave to appeal the resulting convictions, contending among other things that his guilty plea was not voluntarily entered. The application was summarily denied.

Hernandez, while incarcerated, then filed an application for post conviction relief, raising the voluntariness of his guilty plea, which was denied when the circuit court held that the issue of voluntariness had been finally litigated when the Court of Special Appeals denied Hernandez's application for leave to appeal. When we finally considered the issue under Section 645A (a)(1) and (b) of Article 27, Maryland Code (1957, 1996 Repl.Vol.),[15] we concluded that the issue was not finally

---

**15.** Section 645A (a)(1) and (b) of Article 27, Maryland Code (1957, 1996 Repl.Vol.), as applied in *Hernandez*, stated:

(a) *Right to institute proceeding to set aside or correct sentence; time of filing initial proceeding.*—(1) Subject to the provisions of paragraph (2) and (3) of this subsection, any person convicted of a crime and either incarcerated under sentence of death or imprisonment or on parole or probation, including any person confined or on parole or probation as a result of a proceeding before the District Court who claims that the sentence or judgment was imposed in violation of the Constitution of the United States or the Constitution or law of this State, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the sentence is otherwise subject to collateral attack upon any ground of alleged error which would otherwise be available under a writ of habeas corpus, writ of coram nobis, or other common-law or statutory remedy, may institute a proceeding under this subtitle in the circuit court for the county to set aside or correct the sentence, provided the alleged error has not been previously and finally litigated or waived in the proceedings resulting in the convic-

litigated because there was no decision on the merits of his claim. In dicta, we noted that because Hernandez had filed an application for leave to appeal in which he alleged that his guilty plea was not voluntary, he had not waived his right to assert the error in a petition to secure post conviction relief. *Id.* at 728, 690 A.2d at 530.

In *Hunt v. State*, 345 Md. 122, 691 A.2d 1255, *cert. denied,* 521 U.S. 1131, 117 S.Ct. 2536, 138 L.Ed.2d 1036 (1997), the petitioner was convicted by a jury of first-degree murder and sentenced to death. After a number of proceedings in the State and federal courts, Hunt appeared for the fourth time before this Court, challenging the denial of his second petition for post conviction relief. We considered whether the waiver provisions of Section 645A (c) applied and concluded that Hunt's allegations of error were not controlled by the intelligent and knowing standard of waiver, and because Hunt made the tactical decision not to raise his challenges at trial, on direct appeal, or in his first post conviction petition, the challenges were waived.[16] *Id.* at 143, 150, 157, 691 A.2d 1255, 1265, 1268, 1272.

In *State v. Rose*, 345 Md. 238, 691 A.2d 1314 (1997), the petitioner was convicted after a jury trial of first-degree murder and sentenced to life imprisonment, which was affirmed on appeal. Rose failed to raise any challenge to the constitutionality of the reasonable doubt instruction provided

---

tion, or in any other proceeding that the petitioner has taken to secure relief from his conviction.

\* \* \*

(b) *When allegation of error deemed to be finally litigated.*—For the purposes of this subtitle, an allegation of error shall be deemed to be finally litigated when an appellate court of the State has rendered a decision on the merits thereof, either upon direct appeal or upon any consideration of an application for leave to appeal filed pursuant to § 645–I of this subtitle; or when a court of original jurisdiction, after a full and fair hearing, has rendered a decision on the merits thereof upon a petition for a writ of habeas corpus or a writ of error coram nobis, unless said decision upon the merits of such petition is clearly erroneous.

**16.** Section 645A (c), as applicable in *Hunt,* was the same as applied in *Skok* as provided in footnote 8.

to the jury and subsequently filed a petition under the Post Conviction Procedure Act, alleging as his sole ground for relief that he was denied the effective assistance of counsel at his trial; his application was denied. While still incarcerated, Rose filed a second post conviction petition in which he alleged that the reasonable doubt instruction provided to the jury was constitutionally defective. The circuit court denied post conviction relief, finding that Rose's allegation of error had been waived because it was not raised at trial, on appeal, or at the first post conviction petition hearing. The Court of Special Appeals, however, vacated the judgment of the circuit court for consideration on remand of the intelligent and knowing standard waiver of Section 645A (c).[17]

We granted the State's petition for a writ of certiorari and reversed the Court of Special Appeals, agreeing with the circuit court that Rose had waived his right to challenge the reasonable doubt jury instruction in a post conviction petition. *Id.* at 250, 691 A.2d at 1320. In reaching our conclusion based upon our cases interpreting Section 645A (c), we iterated that "simply because an asserted right is derived from the Constitution of the United States or the Constitution of Maryland, ... does not necessarily make the 'intelligent and knowing' standard of waiver applicable." *Id.* at 248, 691 A.2d at 1319. We held that allegations involving deficient jury instructions were not controlled by the intelligent and knowing standard of waiver but "may be effectively waived by the failure of the defendant or his attorney to object at trial or their failure to raise the issue on direct appeal." *Id.* at 250, 691 A.2d at 1318.

Application of the principles from *Skok* and the cases upon which Judge Eldridge in *Skok* relied yields various conclusions. Preliminarily, although Section 645A (b) through (d) do not by their terms apply to coram nobis proceedings when the petitioner is not incarcerated or on parole or probation, (Section 645A (a) provides that "any person convicted of a crime and either incarcerated under sentence of death or imprison-

---

**17.** Section 645A (c), as applicable in *Rose,* was the same as applied in *Skok* as articulated in footnote 8.

ment or on parole or probation . . . may institute a proceeding under [the Post Conviction Procedure Act] subtitle."),[18] in *Skok* we specifically stated that "Art. 27, § 645A (b) through (d), shall be applicable to a coram nobis proceeding challenging a criminal conviction." 361 Md. at 79, 760 A.2d at 662 (citations omitted). Because Section 645A (b) through (d) did apply, and now Section 7–106 of the Criminal Procedure Article, Maryland Code (2001) does apply, Thomas argues that the language of Section 7–106(b) excepts a defendant who does not file an application for leave to appeal his conviction and sentence from its waiver provisions because it allegedly differentiates between failure to raise an allegation of error in a direct appeal and in an application for leave to appeal:

> [A]n allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation:
>
> \* \* \*
>
> 3. on direct appeal, whether or not the petitioner took an appeal;
> 4. in an application for leave to appeal a conviction based on a guilty plea. . . .

Section 7–106(b)(1)(i)(3)-(4) of the Criminal Procedure Article, Maryland Code (2001). Thomas contends that because the General Assembly did not include a provision in Section 7–106(b) addressing the failure to file an application for leave to appeal, as it did in situations involving failure to take direct appeals, waiver does not apply when an application for leave to appeal is not filed, as adverse to when it is and the alleged error is not included. In so arguing, he relies on footnote five of the dissent in *McElroy v. State*, 329 Md. 136, 617 A.2d 1068 (1993), which states:

---

**18.** *See* Edward A. Tomlinson, *Post–Conviction in Maryland: Past, Present and Future*, 45 Md. L.Rev. 927, 932 (1986) ("The scope of the remedy as specified in the Act has remained basically unchanged since 1958. The remedy is available to any person convicted of a crime and either incarcerated under sentence of death or imprisonment or on parole or probation.").

[I]t is clear that filing an application for leave to appeal, in which is included any and all allegations of error a defendant may have, is not a condition precedent to seeking post conviction relief.

Section 645A(c)(1) makes clear that, unlike in the case of direct appeal, a defendant does not waive an allegation of error that could have been raised by way of application for leave to appeal simply by not filing such an application. That section provides: For the purposes of this subtitle, an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation before trial, at trial, on direct appeal (*whether or not the petitioner actually took such an appeal*), in an application for leave to appeal a conviction based on a guilty plea, in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, unless the failure to make such allegation shall be excused because of special circumstances. The burden of proving the existence of such special circumstances shall be upon the petitioner.

Section 645A(c)(2), largely tracking the language of 645A(c)(1), is of similar effect. This difference in treatment of direct appeals and applications for leave to appeal clearly indicates that the Legislature intended that the presumption apply only in the case of direct appeals. To construe the statute any other way requires that language similar to that used in connection with direct appeals be added to the provision pertaining to applications for leave to appeal.

Moreover, § 645A(c)(1) and (2) were amended in 1988 to be consistent with legislation enacted in 1983, *see* Ch. 295, Acts of 1983, which added subsection (e) to Maryland Code (1980, 1983 Repl.Vol.) § 12–302 of the Courts & Judicial Proceedings Article, and made judgments entered on guilty pleas subject to review only on application for leave to appeal. *See also* Ch. 726, Acts of 1988, the preamble to which provides:

> FOR the purpose of clarifying that, if a person fails under certain circumstances to allege an error in an application for leave to appeal a certain conviction, the allegation is deemed to be waived for the purposes of a post conviction proceeding; clarifying a certain presumption relating to failure to make a certain allegation of error; and generally relating to waiver of allegations of error in a certain appeal.

When the amendment was effected, the parenthetical condition pertaining to direct appeals was already in the Code; nevertheless, the Legislature chose not to include such language with respect to the application for leave to appeal provision. Because the provision pertaining to direct appeals has been interpreted to mean that failure to raise an issue on direct appeal constitutes a waiver, whether or not a direct appeal was taken, and the Legislature is presumed to have had knowledge of that interpretation when it added the language pertaining to applications for leave to appeal, it must have intended a different result in those cases involving applications for leave to appeal. Thus, the history of that provision also contradicts the holding of the intermediate appellate court.

*Id.* at 157–58 n. 5, 617 A.2d at 1079 n. 5 (Bell and Chasanow, JJ., dissenting) (some citations omitted) (emphasis in original).

Thomas fails to recognize, however, that *Skok*, a case which was decided subsequent to *McElroy*, involved the failure to file an application for leave to appeal, and this Court had no qualms in applying Section 645A (b) through (d) to the failure to file an entire application. Rather, it would be illogical to permit a defendant who fails to file an application for leave to appeal to be able to seek coram nobis relief without confronting the waiver provisions of Section 645A, while a similarly situated defendant who diligently files an application for leave to appeal would confront a presumption that he intelligently and knowingly waived any allegation of error not raised earlier. Following a conviction based on a guilty plea, a convicted defendant's options with respect to allegations of error are to raise them in an application for leave to appeal, or

not. Certainly the General Assembly did not intend for a defendant who pleads guilty and does not file an application for leave to appeal his conviction to be afforded an easier avenue to secure post conviction review than a defendant who pursues what appellate review is available to him.

The legislative history of the waiver provisions supports this conclusion. In 1988, the General Assembly amended the waiver provisions of the Post Conviction Procedure Act to, in relevant part, provide that "an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation ... in an application for leave to appeal a conviction based on a guilty plea...." House Bill 1176 (1988); Md.Code (1957, 1987 Repl.Vol., 1988 Supp.), Article 27, Section 645A (c). The purpose of House Bill 1176 was to "clarify[ ] that, if a person fails under certain circumstances to allege an error in an application for leave to appeal a certain conviction, the allegation is deemed to be waived for the purposes of a post conviction proceeding." The Senate Judicial Proceedings Committee's Bill Analysis of House Bill 1176 similarly explicated that the amendment filled a gap in the former waiver provisions:

> Under this bill, a person convicted of a crime and incarcerated or on parole or probation is considered to have waived the right to pursue an allegation of error by way of a post conviction proceeding where the defendant could have made, but intelligently and knowingly failed to make such an allegation in an application for leave to appeal a conviction based on a guilty plea.

> Where an allegation of error could have been made in an application for leave to appeal a conviction based on a guilty plea but was not, there is a rebuttable presumption that the person intelligently and knowingly failed to make such an allegation.

> \* \* \*

> Under existing law, the right to make an allegation of error in a post conviction proceeding is waived if the person could

have made, but intelligently and knowingly failed to make such an allegation before trial, at trial, on direct appeal (whether or not appeal is taken), in any habeas corpus or coram nobis proceeding actually instituted, in a prior petition under this statute to correct an error, or in any other proceeding actually instituted by the person.

When an allegation of error could have been made but was not, there is a rebuttable presumption that the person intelligently and knowingly failed to make such an allegation. The current law does not specifically apply to the failure to allege the error in an application for leave to appeal a conviction based on a guilty plea.

Senate Judicial Proceedings Committee, Bill Analysis to House Bill 1176 (1988). The Fiscal Note to House Bill 1176 further remarked that the bill "clarifies that a person has waived his right to challenge when he fails to allege error when appealing a conviction based on a guilty plea." Department of Fiscal Services, Fiscal Note to House Bill 1176 (1988). It is clear, therefore, that the General Assembly intended to treat direct appeals and applications for leave to appeal consistently for purposes of the waiver analysis; waiver occurs when an alleged error could have been raised but was not, whether an application for leave to appeal is filed or not.

■ Thomas argues that he did not knowingly and intelligently fail to file an application for leave to appeal because he alleges that he did not knowingly and intelligently enter his guilty plea. Specifically, Thomas asserts that he could not have intelligently and knowingly waived his right to file for leave to appeal because he was not informed of the maximum sentence he could have received and because he was not informed of the nature of the charges against him and ergo, his guilty plea was not intelligent and knowing. In essence, Thomas conflates whether he knowingly and intelligently waived his right to file an application for leave to appeal with the voluntariness of his guilty plea, relying upon the Court of Special Appeals's opinion in *Parker v. State,* 160 Md.App. at 672, 866 A.2d at 885, and again on the dissent in *McElroy,* 329 Md. at 136, 617 A.2d at 1068.

In *Parker v. State*, 160 Md.App. at 672, 866 A.2d at 885, the petitioner entered various pleas in three separate criminal cases in 1996: in two of the cases, Parker plead guilty to theft over $300, and in a third case, Parker pled guilty to theft over $300 and entered a plea of nolo contendere to a handgun violation. Parker was never informed of the consequences of his pleas, nor was he specifically addressed to determine how he was pleading or whether he understood his plea in any of the three cases; in one of the cases, Parker was not present at his guilty plea hearing. He did not file any applications for leave to appeal from the resulting convictions and sentences. Seeking to avoid being sentenced in federal court under recidivist federal sentencing guidelines, Parker subsequently filed petitions for writs of error coram nobis alleging that his guilty pleas were not knowing and voluntary. The circuit court denied the petitions without explanation, and the Court of Special Appeals reversed. The intermediate appellate court in a post-*Skok* context, first determined, that Parker could proceed with his petition for a writ of error coram nobis because he faced significant collateral consequences in federal court because of his guilty pleas and nolo contendere plea and he was not incarcerated. The court then concluded that Parker's guilty pleas and nolo contendere plea were not entered knowingly and voluntarily, and therefore, he did not waive his right to seek coram nobis relief: "The important point, for present purposes, is that *a guilty plea must be intelligent and knowing*, i.e., it is subject to the *Johnson v. Zerbst* standard. In the present case, appellant's petitions indicate that this standard was not met, and thus there is no waiver." *Parker,* 160 Md.App. at 686, 866 A.2d at 893 (citations omitted) (emphasis in original).

Parker, however, was not advised in any of the proceedings about his right to file applications for leave to appeal so that he could not have knowingly and intelligently waived his right to file. As a result, the case is distinguishable from the present case, because Thomas was expressly informed not only of his right to file an application for leave to appeal to challenge whether his guilty plea was entered freely and

voluntarily, but that the application must have been filed in writing within thirty days of the hearing. Whether or not the standards for voluntariness were conflated in *Parker*, it is clear that Parker could not have intelligently and knowingly waived his right to file an application for leave to appeal because he was never advised of that right. *Skok*, and its predecessors, specifically mandate that colloquy.

In *McElroy v. State*, 329 Md. at 136, 617 A.2d at 1068, McElroy appeared with counsel and pled guilty to distribution of PCP. At his guilty plea hearing, McElroy was informed that his guilty plea limited his right on appeal; the judge told him that he had the right to appeal to the Court of Special Appeals, but only on limited grounds, including whether he freely and voluntarily entered his guilty plea. After McElroy was sentenced to fifteen years imprisonment, he was advised that he had thirty days within which to apply for leave to appeal to the Court of Special Appeals; he did not file an application for leave to appeal. Subsequently, McElroy filed a petition for post conviction relief alleging that his guilty plea was not intelligent and knowing because the trial court did not advise him that the court was not bound by the prosecutor's sentence recommendation, and that if the court imposed a sentence more severe than the one recommended he had no right to withdraw his plea. The circuit court denied McElroy's petition on its merits. The Court of Special Appeals granted McElroy's application for leave to appeal the denial of his petition for post conviction relief and held he had waived his right to post conviction review.

When this Court confronted the issues raised, the majority did not address whether the waiver provisions applied when an application for leave to appeal a conviction was not filed, but instead, applied the provisions and held that McElroy had not rebutted the presumption of waiver because, unlike what was proffered to the court by the petitioner in *Curtis*, 284 Md. at 132, 395 A.2d at 464,

McElroy made no effort to rebut the presumption that he waived the claim that his guilty plea was not knowingly and intelligently entered by failing to raise that issue in an

application for leave to appeal the conviction and sentence based on his guilty plea to the Court of Special Appeals. *McElroy*, 329 Md. at 149, 617 A.2d at 1074. We also concluded that McElroy's "failure to seek appellate review was not excused by any special circumstances," explaining that he was advised of his right to seek review in the Court of Special Appeals, which the majority asserted, McElroy understood:

> Likewise, there is no evidence in this record of any special circumstances that would excuse his failure to seek direct appellate review of his conviction and sentence. He was advised that the Court of Special Appeals was an available resource for that purpose and told that he had to seek such review within 30 days of his conviction. He assured the trial judge that he understood that right. For these reasons, he has failed to meet the burden imposed upon him by Art. 27, § 645A(c)(1) to prove such special circumstances. *Cf. Washington v. Warden*, 243 Md. 316, 220 A.2d 607 (1966) (special circumstances found where post conviction petitioner proved that he had not raised issue in earlier post conviction proceeding because he was suffering from a mental illness which prevented him from assisting his counsel).

*Id.* at 148–49, 617 A.2d at 1074–75.

Thomas, however, again tries to bring himself within the rationale of the dissent in *McElroy* by asserting that he did rebut the presumption of waiver through the transcript of what occurred on the record. *Id.* at 158–63, 617 A.2d at 1079–82 (Bell and Chasanow JJ., dissenting). Thomas contends that like McElroy, he was not adequately informed and was not aware of his potential defenses or how to obtain relief, and therefore, he could not have intelligently and knowingly failed to raise them in an application for leave to appeal. *Id.* Thomas, however, was expressly informed of his right to file an application for leave to appeal to challenge whether his guilty plea was entered freely and voluntarily, and he affirmatively indicated that he understood his appellate rights, unlike those infirmities described in the *McElroy* dissent. Unlike what the dissent emphasized in *McElroy*, Thomas was repre-

sented by counsel during his coram nobis proceeding; he had a hearing and presented evidence as to why his failure to file his application for leave to appeal was not intelligent and knowing, which the hearing judge rejected.

Thomas also alleges that his failure to file his application for leave to appeal was not intelligent and knowing, because, while he was advised of his ability to seek appellate remedies for involuntariness, he was never advised that he could challenge his guilty plea for lack of knowledge. In *Kang v. State*, 393 Md. 97, 899 A.2d 843 (2006), we discussed the waiver colloquy and determined that its sufficiency "depend[s] upon the facts and circumstances of each case," and that the record must indicate that the defendant has been informed of the nature of the right to be waived, and that the court has ascertained the defendant's "awareness" of that right. *Id.* at 111–12, 899 A.2d at 851–52. If Thomas is asserting that the trial court must use the term "knowing" when informing a defendant pleading guilty of his right to file an application for leave to appeal and challenge whether his guilty plea was entered freely and voluntarily, he fails to cite to any authority for such. *Davis v. State*, 278 Md. 103, 361 A.2d 113 (1976) (noting that guilty plea hearing litany does not require a "specific enumeration" of the rights waived). Rather, under the *Johnson v. Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466, standard, knowing connotes "an intentional relinquishment or abandonment of a known right or privilege"; the record specifically reflects that Thomas was advised and understood his right to file an application for leave to appeal to challenge his guilty plea. Judge Pierson expressly found that Thomas had waived his right to secure coram nobis relief by knowingly and intelligently failing to file an application for leave to appeal his conviction and sentence, a finding of which we do not modify absent clear error. *Hunt*, 345 Md. at 166, 691 A.2d at 1276.

Thomas, nevertheless, argues that "special circumstances" exist to excuse his failure to raise his allegation of error in an application for leave to appeal his 1992 conviction because he received a sentence below the maximum authorized sentence by law for the crime he was convicted. To accept Thomas'

argument would require us to extend the application of the "special circumstances" exception to all individuals who plead guilty and receive sentences that are less than the maximum authorized by law, which is the hallmark of guilty pleas. *See Dotson v. State,* 321 Md. 515, 518, 583 A.2d 710, 711 (1991) (recognizing that plea agreements benefit defendants who "give up the possibility of acquittal following trial for the certainty of a relatively lenient disposition included as part of a plea agreement"). Such an exception would render coram nobis relief, contrary to the limited nature of the extraordinary writ, the general rule rather than the exception. *See Skok,* 361 Md. at 72, 760 A.2d at 658 (noting that the writ of error coram nobis is an "extraordinary remedy").

Thomas also contends that his failure to file an application for leave to appeal from his conviction is excused by "special circumstances" because he did not know in 1992 that he could be sentenced in 2005 under the federal sentencing guidelines. In 1992, when Thomas pled guilty, federal enhancements were available for career offenders and clearly, Thomas' conviction and sentence were warning enough of possible enhancements for a subsequent criminal violation. 18 U.S.C., U.S.S.G., Section 4B1.1 (effective November 1, 1987). *See Booze v. State,* 140 Md.App. 402, 408, 780 A.2d 479, 483 (2001) ("[I]t is the conviction itself that warns a defendant of the enhanced penalty."). Further, while Maryland Rule 4–242, in 1992 and now,[19] requires the judge to inform the defendant of the direct consequences of the plea, *Yoswick v. State,* 347 Md. 228, 242,

---

19.   In 1992, Maryland Rule 4–242(c) provided:

**Plea of Guilty.**—The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. The court may accept the plea of guilty even though the defendant does not admit guilt. Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty.

In 2001, in response to recent changes in federal immigration laws, Rule 4–242 was amended. *Skok,* 361 Md. at 77, 760 A.2d at 661. The amendment required the court, before accepting the defendant's guilty

700 A.2d 251, 258 (1997), the failure to advise of collateral consequences then and now have not been the basis to vacate a guilty plea; now it is explicated in the Rule, which provides: "[O]mission of advice concerning the collateral consequences of a plea does not itself mandate that the plea be declared invalid." The enhanced recidivist penalty received by Thomas under the federal sentencing guidelines for his unrelated future criminal conduct was a collateral consequence of his 1992 guilty plea, *see Hawkins v. State,* 302 Md. 143, 148, 486 A.2d 179, 182 (1985) (remarking that punishment under repeat offender statutes "is only for the new crime, being greater where the defendant habitually commits crimes"), and therefore, the circuit court, before accepting his guilty plea in 1992, was not required to advise him of the possibility of being sentenced in the future as a recidivist.

In conclusion, because Thomas was informed of, and understood, his right to file an application for leave to appeal, and

---

or nolo contendere plea, to inform the defendant that if he is not a United States citizen, he may face deportation, detention, or ineligibility for citizenship. Rule 4–242(c) and (e) now provides:

(c) **Plea of guilty.** The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. In addition, before accepting the plea, the court shall comply with section (e) of this Rule. The court may accept the plea of guilty even though the defendant does not admit guilt. Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty.

\* \* \*

(e) **Collateral Consequences of a Plea of Guilty or Nolo Contendere.** Before the court accepts a plea of guilty or nolo contendere, the court, the State's Attorney, the attorney for the defendant, or any combination thereof shall advise the defendant (1) that by entering the plea, if the defendant is not a United States citizen, the defendant may face additional consequences of deportation, detention, or ineligibility for citizenship and (2) that the defendant should consult with defense counsel if the defendant is represented and needs additional information concerning the potential consequences of the plea. The omission of advice concerning the collateral consequences of a plea does not itself mandate that the plea be declared invalid.

did not file an application for leave to appeal, a rebuttable presumption arose that he waived his right to challenge his conviction through a coram nobis proceeding. Thomas did not rebut the presumption, nor did he establish "special circumstances" to excuse his failure to file an application for leave to appeal, and thus, his right to challenge his conviction and sentence through a writ of error coram nobis petition was waived.

### JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED WITH COSTS.

BELL, C.J., RAKER, and GREENE, JJ., Dissent.

RAKER, J., dissenting, joined by BELL, C.J., and GREENE, J.:

The majority cuts the heart out of the writ of coram nobis in Maryland by holding that petitioner waived the right to challenge his conviction through a petition for writ of coram nobis by his failure to file an application for leave to appeal his guilty plea or a petition for post-conviction relief. If a person must first file an application for leave to appeal or a petition for post-conviction relief, will a writ of error coram nobis *ever* be appropriate? In effect, the majority overrules *Skok v. State*, 361 Md. 52, 760 A.2d 647 (2000), sub silentio.

I would hold that a person who enters a guilty plea but who does not file an application for leave to appeal or a post-conviction petition challenging that plea does not waive the right to later challenge the resulting conviction in a coram nobis petition. I would remand the matter to the Circuit Court for that court to consider whether petitioner satisfied the requirements for relief, particularly the threshold question of whether valid reasons exist for his failure to attack the conviction earlier.

A writ of error coram nobis, like a habeas corpus proceeding and a proceeding under the Maryland Uniform Post Conviction Procedure Act, may be used to collaterally challenge a criminal judgment. *Skok*, 361 Md. 52, 760 A.2d 647; *Ruby v. State*, 353 Md. 100, 111, 724 A.2d 673, 678 (1999). It is an

extraordinary remedy, to be employed only upon compelling circumstances. *Skok* at 72, 760 A.2d 647 (citing *United States v. Morgan*, 346 U.S. 502, 511–12, 74 S.Ct. 247, 252–53, 98 L.Ed. 248 (1954)). Relief pursuant to a writ of error coram nobis is justified "only under circumstances compelling such action to achieve justice" and only where "sound reasons" exist for the failure to seek appropriate earlier relief. *United States v. Morgan*, 346 U.S. 502, 511–12, 74 S.Ct. 247, 252–53, 98 L.Ed. 248 (1954). One of the issues which may be raised by way of coram nobis is the voluntariness of a plea in a criminal case. *Skok*, 361 Md. at 68, 760 A.2d at 656.

In *Skok v. State*, 361 Md. 52, 760 A.2d 647, we explored the applicability of a writ of error coram nobis to the claim of an involuntary plea. This court, like other state courts, embraced the rationale of the leading Supreme Court case on coram nobis proceedings, *United States v. Morgan*. We stated as follows:

"Along with the vast majority of appellate courts which have considered the matter, we believe that the scope of coram nobis, as delineated in *United States v. Morgan*, is justified by contemporary conditions and public policy. Very often in a criminal case, because of a relatively light sanction imposed or for some other reason, a defendant is willing to forego an appeal even if errors of a constitutional or fundamental nature may have occurred. Then, when the defendant later learns of a substantial collateral consequence of the conviction, it may be too late to appeal, and, if the defendant is not incarcerated or on parole or probation, he or she will not be able to challenge the conviction by a petition for a writ of habeas corpus or a petition under the Post Conviction Procedure Act."

*Id.* at 77, 760 A.2d at 660.

We recognized that the "scope of coram nobis to challenge criminal convictions is, however, subject to several important qualifications." *Id.* at 78, 760 A.2d at 661. We noted that the three essential conditions necessary to grant relief pursuant to a coram nobis petition were the grounds for challenging the

criminal conviction must be of a constitutional, jurisdictional or fundamental character, the burden of proof is on petitioner to rebut the presumption of regularity that attaches to the underlying criminal procedure, and the coram nobis petitioner must be suffering or facing significant collateral consequences from the conviction. *Id.* at 78–79, 760 A.2d at 661–62. In addition, we noted that basic principles of waiver are applicable to coram nobis proceedings. *Id.* at 79, 760 A.2d at 661–62. Discussing waiver, we stated as follows:

> "Basic principles of waiver are applicable to issues raised in coram nobis proceedings. Similarly, where an issue has been finally litigated in a prior proceeding, and there are no intervening changes in the applicable law or controlling case law, the issue may not be relitigated in a coram nobis action. Therefore, the same body of law concerning waiver and final litigation of an issue, which is applicable under the Maryland Post Conviction Procedure Act, Code (1957, 1996 Repl.Vol., 1999 Supp.), Art. 27, § 645A (b) through (d), shall be applicable to a coram nobis proceeding challenging a criminal conviction."

*Skok* at 79, 760 A.2d at 661–662 (some internal citations omitted). Based on this language, the majority concludes that a petitioner waives coram nobis relief if the individual failed to file an application for leave to appeal or to file a petition for post-conviction relief. The majority's reliance on this language to support its holding is misplaced.

Writing for the Court in *Skok,* Judge Eldridge discussed the reasons a defendant might not challenge an error by moving to withdraw a plea or by way of post-conviction action. He stated as follows:

> "Very often in a criminal case, because of a relatively light sanction imposed ... a defendant is willing to forego an appeal even if errors of a constitutional or fundamental nature may have occurred. Then, when the defendant later learns of a substantial collateral consequence of the conviction, it may be too late to appeal, and ... he or she will not be able to challenge the conviction by a petition for a writ of

habeas corpus or a petition under the Post Conviction Procedure Act."

*Skok*, 361 Md. at 77, 760 A.2d at 660. The situation Judge Eldridge addressed is very common, and, in fact, reflects the circumstances in both *Skok* and the case at bar. This Court, in *Skok*, could not have meant what the majority today holds.

Petitioner contends that because he is suffering serious collateral consequences as a result of his 1992 conviction, *i.e.*, that he was sentenced to an enhanced penalty under the federal recidivist sentencing guidelines, he is entitled to the same coram nobis relief that Skok enjoyed. Petitioner argues that, like Skok, he has not waived his right to seek error coram nobis relief because he did not file an application for leave to appeal his conviction and sentence.

This argument is persuasive. The procedural similarities between petitioner and Skok illustrate that this Court in *Skok* did not mean for waiver to apply to collateral attacks on guilty pleas where no application for leave to appeal was filed. *Skok* held that the voluntariness of a guilty plea may be raised in a coram nobis proceeding even when it had not previously been raised. Like petitioner, Skok pled guilty; Skok never filed an application for leave to appeal and a request to withdraw his guilty plea; and Skok did not file a petition for post-conviction relief raising the voluntariness of his guilty plea. *Id.* at 56, 760 A.2d at 649. Despite his failure to raise his claim prior to the action at issue, Skok was not found to have waived the common law right to file a writ of error coram nobis. *See id.* at 79, 760 A.2d at 661–662. We stated as follows:

> "The issues concerning Skok's pleas have not previously been litigated, and Skok is clearly facing substantial collateral consequences from his two convictions. Skok, not being incarcerated or on parole or probation as a result of the convictions, presently has no other common law or statutory remedy. Under the circumstances, Skok was entitled to a hearing under his motion for coram nobis relief."

*Id.* at 82, 760 A.2d at 663. Similarly, petitioner is suffering serious collateral consequences.[1] Because he is not incarcerated, on parole or probation, he too has no other avenue of relief. His claims concerning the constitutional infirmity of his plea have never before been litigated. No waiver was found in *Skok.* The same should hold true in the instant case—there should be no waiver for failure to file application for leave to appeal or post-conviction relief.

Petitioner presents a second argument. He asserts that the waiver language of § 7–106(b) does not apply to defendants who do not file an application for leave to appeal because the General Assembly did not specifically address the case of those who never file such an application even though they specifically address those who fail to file a direct appeal. Specifically, petitioner contrasts the language in Section 7–106(b)(1)(i)(4) of the Criminal Procedure Article of the Maryland Code pertaining to applications for leave to appeal with the language in Section 7–106(b)(1)(i)(3) concerning direct appeal. Section 7–106(b)(1)(i) states as follows:

> "(b) *Waiver of allegation of error.*—(1)(i) Except as provided in subparagraph (ii) of this paragraph, an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation . . ."
>
> 3. on direct appeal, *whether or not the petitioner took an appeal;*
>
> 4. in an application for leave to appeal "a conviction based on a guilty plea; . . ."

Md.Code (2001, 2006 Cum.Supp.), § 7–106(b)(1)(i) of the Criminal Procedure Article (emphasis added). Petitioner then argues that waiver does not apply when an application for

---

1. In *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), respondent Morgan had pled guilty in federal court and had served his four year prison sentence. Several years later, he was convicted in a New York State court and was sentenced to a longer term as a second offender because of the prior federal conviction. The Supreme Court considered this enhanced sentence as a serious collateral consequence.

leave to appeal is *not* filed, as compared to when an application is filed and the alleged error is omitted.

In essence, petitioner asks us to adopt footnote five from Chief Judge Robert Bell's dissent in *McElroy v. State*, 329 Md. 136, 617 A.2d 1068 (1993). In that case, McElroy appeared with counsel and pled guilty to distribution of PCP. *Id.* at 143, 617 A.2d at 1072. He had never filed an application for leave to appeal from his guilty plea but he subsequently filed a petition for post-conviction relief alleging that his guilty plea was involuntary on the grounds that it was not intelligent and knowing because the trial court did not advise him that the court was not bound by the prosecutor's sentence recommendation, and that if the court imposed a sentence more severe than the one recommended he had no right to withdraw his plea. *Id.* at 143–45, 617 A.2d at 1072. The Circuit Court denied McElroy's petition on its merits, not on waiver. *Id.* at 145, 617 A.2d at 1073. The Court of Special Appeals granted McElroy's application for leave to appeal the denial of his petition for post-conviction relief. *Id.* That court held McElroy had waived his right to post-conviction review. *Id.*

When this Court confronted the issues raised, the majority explicitly declined to address the question of whether the waiver provision contained in the Maryland Post Conviction Procedure Act, Section 645A(c) of Article 27 of the Maryland Code [2] applied when an application for leave to appeal a

---

2. As applicable in McElroy, the pertinent part of § 645A read as follows:

"(c) *When allegation of error deemed to have been waived.*—(1) For the purposes of this subtitle, an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation before trial, at trial, on direct appeal (whether or not the petitioner actually took such an appeal), in an application for leave to appeal a conviction based on a guilty plea, in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, unless the failure to make such allegation shall be excused because of special circumstances. The burden of proving the existence of such special circumstances shall be upon the petitioner."

conviction and sentence was not filed. *Id.* at 146, 617 A.2d at 1073 (discussing Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 645A). Instead, the majority assumed that the allegation of error was waived. Applying § 645A, the majority held that McElroy had failed to rebut the presumption that he had knowingly and intelligently waived the allegation and that McElroy also failed to prove any special circumstances that might excuse waiver. *Id.* at 149, 617 A.2d at 1074–75. The dissent, however, did consider the issue and determined that because the General Assembly had not stated waiver explicitly applied when an application for leave to appeal a conviction and sentence is not filed, as it had for direct appeals, the General Assembly must not have intended the waiver provision to apply when an application for leave to appeal is never filed. The footnote reads as follows:

"Unless § 645A requires the filing of an application for leave to appeal to preserve an error alleged to have occurred in the proceedings pursuant to which the application is required, the petitioner McElroy, who did not file such an application, cannot be said to have waived the allegations of error presently before the Court. I believe that § 645A does not so require. I reach this conclusion by application of the ordinary rules of statutory construction."

"Those rules require us to look no further than to the language the Legislature used to convey the meaning it wished the statute to be interpreted to have. When those words are clear and unambiguous, ordinarily we need not go any further, although, in the interest of completeness, we may look at the purpose of the statute and compare the

"(2) When an allegation of error could have been made by a petitioner before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in an application for leave to appeal a conviction based on a guilty plea, in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, but was not in fact so made, there shall be a rebuttable presumption that said petitioner intelligently and knowingly failed to make such allegation."
Md.Code (1957, 1992 Repl.Vol.), Art. 27 § 645A.

result obtained by use of the plain language with the purpose of the statute. We are also to give effect to the entire statute, neither adding, nor deleting, words in order to give it a meaning not otherwise evident by the words actually used. Finally, we seek to give the statute a reasonable interpretation, not one that is illogical or incompatible with common sense."

"When these rules of statutory construction are applied, it is clear that filing an application for leave to appeal, in which is included any and all allegations of error a defendant may have, is not a condition precedent to seeking post conviction relief."

"Section 645A(c)(1) makes clear that, *unlike in the case of direct appeal, a defendant does not waive an allegation of error that could have been raised by way of application for leave to appeal simply by not filing such an application.*" That section provides:

> "For the purposes of this subtitle, an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation before trial, at trial, on direct appeal (*whether or not the petitioner actually took such an appeal* ), in an application for leave to appeal a conviction based on a guilty plea, in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, unless the failure to make such allegation shall be excused because of special circumstances. The burden of proving the existence of such special circumstances shall be upon the petitioner. (Emphasis added)."

"Section 645A(c)(2), largely tracking the language of 645A(c)(1), is of similar effect. This difference in treatment of direct appeals and applications for leave to appeal clearly indicates that the Legislature intended that the presumption apply only in the case of direct appeals. To construe the statute any other way requires that language similar to that

used in connection with direct appeals be added to the provision pertaining to applications for leave to appeal."

"Moreover, § 645A(c)(1) and (2) were amended in 1988 to be consistent with legislation enacted in 1983, *see* Ch. 295, Acts of 1983, which added subsection (e) to Maryland Code (1980, 1983 Repl.Vol.) § 12–302 of the Courts & Judicial Proceedings Article, and made judgments entered on guilty pleas subject to review only on application for leave to appeal." *See also* Ch. 726, Acts of 1988, the preamble to which provides:

> "FOR the purpose of clarifying that, if a person fails under certain circumstances to allege an error in an application for leave to appeal a certain conviction, the allegation is deemed to be waived for the purposes of a post conviction proceeding; clarifying a certain presumption relating to failure to make a certain allegation of error; and generally relating to waiver of allegations of error in a certain appeal."

"When the amendment was effected, the parenthetical condition pertaining to direct appeals was already in the Code; nevertheless, the Legislature chose not to include such language with respect to the application for leave to appeal provision. Because the provision pertaining to direct appeals has been interpreted to mean that failure to raise an issue on direct appeal constitutes a waiver, whether or not a direct appeal was taken, and the Legislature is presumed to have had knowledge of that interpretation when it added the language pertaining to applications for leave to appeal, it must have intended a different result in those cases involving applications for leave to appeal. Thus, the history of that provision also contradicts the holding of the intermediate appellate court."

*Id.* at 156–58 n. 5, 617 A.2d at 1078–79 n. 5 (Bell and Chasanow, JJ., dissenting) (some internal citations omitted, first emphasis added).

I agree with Chief Judge Bell and Judge Chasanow, and would hold that a person who does not file an application for

leave to appeal a guilty plea does not waive the right to file a writ of error coram nobis. There are many cases where a defendant, after pleading guilty, is satisfied with the disposition in the case and therefore, has no reason or incentive to set aside the plea. If significant collateral consequences of the conviction and sentence that were unforeseen by the defendant at the time of the plea bargain arise after the defendant is no longer incarcerated or on parole, and the defendant is thereby ineligible to file a petition for post-conviction relief, he or she should be afforded the opportunity to petition for a writ of error coram nobis.

## LACHES

It appears to be the common law rule that there was no time limitation within which to file a petition for a writ of coram nobis, except perhaps laches. *State v. Romero,* 76 N.M. 449, 415 P.2d 837, 840 (1966) (citing James W.M. Moore & Elizabeth B.A. Rogers, *Federal Relief From Civil Judgments,* 55 YALE L.J. 623, 674 (1946); *State v. Huffman,* 207 Or. 372, 297 P.2d 831, 852 (1956)). *See also Morgan,* 346 U.S. at 507, 74 S.Ct. at 250 (coram nobis petition allowed "without limitation of time"). Nonetheless, the right to file for coram nobis relief is not unlimited. *See* discussion *supra.* Just as the *Skok* Court noted that basic principles of waiver to apply to the inquiry at hand, this case prompts the consideration of laches as a limitation on the scope of the right to petition for a writ of error coram nobis.

In Maryland, the essential elements of the doctrine of laches are inexcusable delay and prejudice to the opposing party. *Liddy v. Lamone,* 398 Md. 233, 243–44, 919 A.2d 1276, 1283 (2007); *Ross v. Board of Elections,* 387 Md. 649, 668–70, 876 A.2d 692, 703–04 (2005); *Buxton v. Buxton,* 363 Md. 634, 645–46, 770 A.2d 152, 158–59 (2001); *Parker v. Board Of Elec. Sup'rs,* 230 Md. 126, 130, 186 A.2d 195, 197 (1962).

Several federal courts of appeal have applied the doctrine of equitable laches to petitions for post-conviction relief. *See, e.g., Telink v. United States,* 24 F.3d 42 (9th Cir.1994) (holding

that the district court did not abuse its discretion in applying laches after a five year delay in filing a writ of coram nobis); *Oliver v. United States*, 961 F.2d 1339 (7th Cir.1992) (holding doctrine of laches supported the denial of a § 2255 motion when there was an unreasonable delay of seventeen years); *United States v. Darnell*, 716 F.2d 479 (7th Cir.1983) (holding the doctrine of laches applicable to petitions for coram nobis relief and applying it to bar claims of ineffective assistance of counsel and involuntary guilty plea after a twenty-year delay). The courts base their reasoning in language from *United States v. Morgan*, emphasizing the public policy goal of finality of judgments and by noting that the United States Supreme Court limited the application of coram nobis to cases where "sound reasons" existed for failure to seek earlier appropriate relief. *United States v. Darnell*, 716 F.2d 479, 480–81; *see also Telink v. United States*, 24 F.3d 42, 47–48 (1994); *cf. Foont v. United States*, 93 F.3d 76, 80 (2nd Cir.1996) (holding that language in *Morgan v. United States* requiring "sound reasons" for delay does not amount to application of the doctrine of laches but only requires the consideration of reasons surrounding petitioner's delay, not prejudice to the government).

The factual circumstances of *Oliver v. United States* illustrate both the necessity and the utility of the doctrine of laches in assessing the appropriateness of post-conviction relief. In that case, Oliver pled guilty to two related federal bank charges in 1973. *Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir.1992). At the time of the proceedings, Oliver had not yet begun to serve the sentence for the federal charges because he was serving a life sentence imposed by the State of Indiana. *Id.* at 1341. Fourteen years later, in 1987, Oliver filed a "motion for records of proceedings," seeking a transcript of his plea and sentencing. The district court denied the motion and informed Oliver that he first needed to file a § 2255 motion pursuant to 18 U.S.C. § 3006A, in order to get a copy of the transcripts. *Id.* Three years passed before Oliver filed the § 2255 motion, alleging that during his guilty plea he was not advised of his right to confront his

accusers or of his right against self incrimination. *Id.* The district court found that the transcripts were no longer available because they could not be located and the long delay in filing meant the routine date of destruction of United States' Attorney's notes had passed. *Id.*

The district court denied the § 2255 motion, finding procedural defects and that the doctrine of laches barred Oliver's claim. *Oliver,* 961 F.2d at 1341. The United States Court of Appeals for the Seventh Circuit upheld the application of laches, holding that the district court was justified in finding "that Oliver's seventeen-year delay in bringing his section 2255 action prejudiced the government in its ability to respond to the merits of Oliver's allegations" and that the district court was also justified in finding Oliver's delay unreasonable. *Id.* at 1342. The Seventh Circuit's application of laches in this case resulted in an outcome that took into account the importance of maintaining an available avenue of post-conviction challenge to constitutionally infirm guilty pleas and the reality that the government may often be unable to adequately defend against such challenges when they are preceded by long delay.

In *Telink, Inc. v. United States,* 24 F.3d 42 (9th Cir.1994),[3] the United States Court of Appeals for the Ninth Circuit similarly applied the doctrine of laches in a writ of coram nobis action. Discussing laches, the court stated:

"Because a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations. Rather, the petition is subject to the equitable doctrine of laches. Unlike a limitations period, which bars an action strictly by time lapse, laches bars a claim if unreasonable delay causes prejudice to the defendant. '[L]aches is not

---

**3.** Although the court in *Telink* notes that in that federal circuit, a writ of error coram nobis is a step in the original criminal proceeding, and in Maryland, a writ of error coram nobis is in the nature of a civil proceeding, the difference is immaterial as to whether the doctrine of laches applies to coram nobis.

like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or parties.' "

*Id.* at 45 (internal citations omitted). The court held that the time available to file a coram nobis petition should be based on a "flexible, equitable time limitation," *Id.* at 47 (quoting *Darnell*, 716 F.2d at 480), and that a district court could at any time apply the doctrine of laches to bar a claim. *Id.* at 47.

Laches is a valuable tool for the trial judge in evaluating a petition for coram nobis. As in *Oliver*, it can prevent the government from being unfairly prejudiced by evidentiary destruction resulting from long, unexcused delay. Unlike waiver, it allows the trial court to consider both the prejudice to the government and the reasons for delay. In balancing the two factors, the trial court has more flexibility to allow writs of coram nobis to proceed in those cases where fairness demands an opportunity to be heard on the matter of post-conviction relief. In erroneously applying the waiver contained in § 7–106(b)(1)(i) of the Criminal Procedure Article of the Maryland Code, the trial judge did not consider the reasons for delay or the merits of the claim that the plea was constitutionally invalid. I would remand this case to permit petitioner to proceed in the Circuit Court and to demonstrate that he can satisfy all the elements, including "sound reasons" for delay, to justify coram nobis relief.

### Voluntary and Intelligent Guilty Plea

As to the merits of Petitioner' claim, if the Circuit Court finds that laches does not bar the coram nobis action, I would hold that the plea was involuntary and that he should be permitted to withdraw the plea because he was not informed of the offense to which he was pleading guilty The Circuit Court found that there was no requirement to inform petitioner of the maximum possible sentence for the charges he pled to, but determined that his guilty plea was constitutionally infirm because he was not advised of the nature of the charge to which he was pleading guilty. The Court of Special Appeals agreed with the Circuit Court that petitioner need not

be informed of the maximum penalty he faced, but disagreed that petitioner's plea was constitutionally infirm because the statement of facts read into the record during the guilty plea hearing was sufficient to inform Petitioner of the nature of the charge and the elements of the crime to which he pled guilty. I disagree with the Court of Special Appeals and would hold that petitioner's plea was constitutionally infirm because he was not advised of the nature of the charge to which he was pleading guilty and because he was not informed of the maximum penalty he faced as a result of his guilty plea.

It is fundamental that to be valid, a guilty plea must be entered voluntarily and intelligently. *Metheny v. State,* 359 Md. 576, 601, 755 A.2d 1088, 1102 (2000); *Yoswick v. State,* 347 Md. 228, 239, 700 A.2d 251, 256 (1997); *State v. Priet,* 289 Md. 267, 274–75, 424 A.2d 349, 353 (1981); *Davis v. State,* 278 Md. 103, 118, 361 A.2d 113, 121 (1976). Maryland Rule 4–242 sets forth the procedure for the acceptance of a guilty plea, requiring either the court or counsel to ask the defendant questions concerning the voluntariness of his plea on the record in open court. In 1992, at the time of petitioner's guilty plea proceeding, Rule 4–242(c) provided as follows:

"(c) **Plea of guilty.** The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. The court may accept the plea of guilty even though the defendant does not admit guilt. Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty."

Md. Rule 4–242 (1992).[4]

A defendant must be informed of the nature of the charge to which he or she is pleading. A proffer of facts by the State

---

4. In 2001, in response to changes in federal immigration laws, Rule 4–242 was amended to as it currently provides. *See Skok,* 361 Md. at 77,

that includes conduct amounting to a robbery is insufficient to advise a defendant of the nature of the charge to which he or she is entering a guilt plea. Even though a robbery in fact occurred, a defendant could have been entering a plea to the lesser included offenses of either theft or assault.

Certainly, the requirement that the defendant have a basic understanding of the charge to which he or she is pleading guilty requires the trial court to inform the individual of the charge to which he or she is pleading guilty. Because a guilty plea is an "admission of conduct that constitutes all the elements of a formal criminal charge," *Metheny*, 359 Md. at 599, 755 A.2d at 1101 (quoting *Sutton v. State*, 289 Md. 359, 364, 424 A.2d 755, 758 (1981)), and cannot be voluntary unless the individual possesses an understanding of the charge to which he or she is pleading guilty, it cannot be said that a

---

760 A.2d at 661. The amended Rule requires the court, before accepting a guilty or nolo contendere plea, to inform the defendant that if he or she is not a United States citizen, he or she may face deportation, detention, or ineligibility for citizenship. Maryland Rule 4–242(c) and (e) states as follows:

"(c) **Plea of guilty.** The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. In addition, before accepting the plea, the court shall comply with section (e) of this Rule. The court may accept the plea of guilty even though the defendant does not admit guilt. Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty."

\* \* \*

(e) **Collateral Consequences of a Plea of Guilty or Nolo Contendere.** Before the court accepts a plea of guilty or nolo "contendere, the court, the State's Attorney, the attorney for the defendant, or any combination thereof shall advise the defendant (1) that by entering the plea, if the defendant is not a United States citizen, the defendant may face additional consequences of deportation, detention, or ineligibility for citizenship and (2) that the defendant should consult with defense counsel if the defendant is represented and needs additional information concerning the potential consequences of the plea. The omission of advice concerning the collateral consequences of a plea does not itself mandate that the plea be declared invalid."

guilty plea is entered voluntarily and intelligently if the individual does not know to what charge he is pleading guilty.

In the case *sub judice,* a review of the transcript from the guilty plea hearing confirms that petitioner was not informed that he was pleading guilty to robbery with a deadly weapon; the court did not, nor did his counsel, refer to the count of the indictment nor to the specific offense to which he was pleading guilty. The voir dire in the courtroom does not indicate that the court or counsel advised petitioner of the charge to which he was entering a guilty plea.

The State contends, however, that petitioner was charged only with robbery with a deadly weapon, and that the statement of facts read during the guilty plea proceeding was sufficient to inform petitioner of the nature of charge of robbery with a deadly weapon. Both arguments are misplaced. The docket entries reflect that petitioner was charged with robbery with a deadly weapon, assault with intent to commit robbery, carrying a concealed deadly weapon, and openly carrying a deadly weapon with the intent to injure, and that all of the charges were disposed of at the 1992 guilty plea hearing.

Moreover, the statement of facts read into the record during the guilty plea proceeding was not sufficient to advise petitioner of the nature of the charge to which he was pleading guilty. The statement of facts specified only that on September 20, 1992, petitioner approached two people in the 1700 block of West North Avenue in Baltimore City, produced a pellet gun, demanded money, and received $54.00 collectively from the two individuals. It is not evident from the statement of facts that petitioner was pleading guilty to robbery with a deadly weapon as opposed to any of the other crimes for which he was charged or the lesser included charges such as theft or assault. Rule 4–242(c) required the trial court to ensure that petitioner understood the nature of the charge to which he was pleading guilty before accepting his plea. The court did not do so, therefore petitioner's plea was constitutionally infirm.

Petitioner asserts also that his guilty plea was not entered voluntarily and intelligently because he was not informed of one of the consequences of his plea, the statutory maximum penalty for the charge to which he is pleading. Both the Circuit Court and the Court of Special Appeals rejected petitioner's argument and found that the trial court was not required to advise him of the statutory maximum penalty he faced. The State's argument is based on the fact that petitioner's sentence was mutually agreed upon, and therefore, the statutory maximum is irrelevant. Because I would hold that petitioner was not adequately advised of the nature of the charge to which he was pleading guilty, I would not address this second argument. I would remand this case to permit petitioner to proceed in the Circuit Court and to demonstrate that he can satisfy all the elements to justify coram nobis relief.

Chief Judge Bell and Judge Greene have authorized me to state that they join in the views expressed in this dissenting opinion.